FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2015 DEC 29 PM 3:44

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA,

vs. CASE NO.: 3:15-MJ-1170-J-JRK

JOSHUA RYNE GOLDBERG,

Defendant.

______________________________/

**MOTION TO INTERVENE FOR PURPOSES OF OPPOSING DEFENDANT'S MOTION TO SEAL COMPETENCY EVALUATION REPORT, AND REQUEST FOR HEARING**

Morris Publishing Group LLC, d/b/a The Florida Times-Union, The Associated Press, Multimedia Holdings Corporation d/b/a WTLV/WJXX First Coast News, Graham Media Group, Florida, Inc., d/b/a WJXT News4Jax, and Cox Television Jacksonville, LLC, WJAX/WFOX (collectively "Media Intervenors"), pursuant to common law, the First Amendment to the United States Constitution, Local Rule 1.09, and the Court's Order of December 16, 2015 [Dkt. 30], move to intervene in this action for the limited purpose of opposing Defendant's Motion to Seal Competency Evaluation Report ("Motion to Seal") [Dkt. 28] of Lisa B. Feldman, Psy.D., admitted into evidence as Government's Exhibit 2 during an open and public competency hearing on December 14, 2015, and request a hearing. In support hereof, Media Intervenors state:

1. There is no topic that is more on the minds of the American citizenry right now than terrorism. Joshua Ryne Goldberg, the Defendant in this case, is charged with plotting an attack to take place in Kansas City, Missouri, an attack

which was purposefully connected to the anniversary of the most horrific terrorist attack in United States history on September 11, 2001. Fortunately, the plot was foiled and Kansas City is not listed along with San Bernardino, Boston, New York, Oklahoma City, and Paris, among others. The horrific events that transpired at those locations are indelibly etched into the memories of Americans, and indeed many others around the world.

2. "The threat from terrorism is real, but we will overcome it." See Address to the Nation by the President, December 6, 2015, https://www.whitehouse.gov/the-press-office/2015/12/06/address-nation-president, made following the terrorists attacks in Paris and San Bernardino. A public survey from December 8-13, 2015, conducted by the Pew Research Center found that "[n]early three-in-ten (29%) Americans cite terrorism (18%), national security (8%) or ISIS (7%) as the most important problem facing the country today." Views of Government's Handling of Terrorism Fall to Post-9/11 Low, Pew Research Center (Dec. 15, 2015), at http://www.people-press.org/2015/12/15/views-of-governments-handling-of-terrorism-fall-to-post-911-low/. Similarly, a Gallup poll conducted December 2-6, 2015, found that Americans believe terrorism is the greatest problem our Nation faces. Riffkin, Rebecca, Americans Name Terrorism as No. 1 U.S. Problem, Gallup (Dec. 14, 2015), http://www.gallup.com/poll/187655/americans-name-terrorism-no-problem.aspx. Another Gallup poll conducted December 8-9, 2015, found that trust in the federal government's ability to protect against terrorism is at a new low of 55%. McCarthy, Justin, Trust in Government to Protect

Against Terrorism at New Low, Gallup (Dec. 11, 2015), http://www.gallup.com/poll/187622/trust-government-protect-against-terrorism-new-low.aspx. This is the lens through which the public views the federal judicial system with respect to a defendant charged with terrorism, and there can be no doubt that the manner in which these cases are handled is front and center in the public's mind.

3. In this case, the Court ordered a pretrial evaluation of Defendant pursuant to Rule 12.2(c), Federal Rules of Criminal Procedure, and 18 U.S.C. § 4241, at the request of Defendant's legal counsel. See Dkt. 13; Order dated 9/16/15 [Dkt. 17]. Defendant knew that information regarding his mental health would be presented in open court for the purpose of delaying, or perhaps preventing altogether, his further prosecution, and testimony and documentary evidence were in fact presented in open court with members of the public and media present.

4. At the competency hearing on December 14, 2015, the report was *admitted into evidence* as Government's Exhibit 2. The doctor's testimony and report were relied upon when the Court determined that Defendant is currently incompetent to stand trial. Accordingly, much of the information the Defendant seeks to place under seal has already been disclosed to the public.

5. During the December 14 hearing the Defendant made an *ore tenus* motion to seal Government's Exhibit 2, which the Court temporarily granted, directing the Defendant to file a motion to request that the exhibit be sealed, and

allowing the Government or any other interested party to file an opposition to Defendant's motion no later than December 29, 2015 [Dkt. 30].

6. The Defendant filed his Motion to Seal asserting that "[w]hile a record of Defendant's mental health status was made in open court at the competency hearing ... the Report contains more detailed and personal information as to Defendant's medical condition, treatment and medical history." Motion to Seal at 2. Defendant asserts that these types of matters are "traditionally kept confidential" although there is no authority to support such a broad statement. As discussed in more detail below, courts that have considered these arguments have rejected them as a basis for closure.

7. Media Intervenors have clear common law and First Amendment rights of access at stake. As will be explained below, those rights far outweigh the interests advanced by Defendant here.

8. The Court relied on Government's Exhibit 2 in ruling that Defendant is not competent to stand trial at this time. See Order dated 12/16/15 [Dkt. 29] at 2 ("After hearing testimony from Dr. Feldman *and reviewing the Government's exhibits*, the Court finds that Defendant is mentally incompetent to stand trial at the present time because he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.") (emphasis added).

9. Defendant's Motion to Seal fails to demonstrate a compelling interest that outweighs the Media Intervenors' and the public's substantial common law and

First Amendment rights of access. Accordingly, Defendant's Motion to Seal should be denied.

## MEMORANDUM OF LAW

### I. Media Intervenors' Right to Intervene and be Heard.

Newsgathering is protected by the First Amendment. See United States v. Sherman, 581 F.2d 1358, 1361 (9th Cir. 1978) ("The Supreme Court has recognized that newsgathering is an activity protected by the First Amendment."); CBS Inc. v. Young, 522 F.2d 234, 237-38 (6th Cir. 1975) (newsgathering "qualifies for First Amendment protections"); CBS Inc. v. Smith, 681 F. Supp. 794, 803 (S.D. Fla. 1988) ("[s]imply put, newsgathering is a basic right protected by the First Amendment").

> The first amendment's broad shield for freedom of speech and of the press is not limited to the right to talk and print. The value of these rights would be circumscribed were those who wish to disseminate information denied access to it, for freedom to speak is of little value if there is nothing to say.

In re The Express-News Corp., 695 F.2d 807, 808 (5th Cir. 1982). Courts have recognized that the "protected right to publish the news would be of little value in the absence of sources from which to obtain it." CBS Inc. v. Young, 522 F.2d at 238. The United States Supreme Court has opined that "[w]ithout some protection for seeking out the news, freedom of the press could be eviscerated." Branzburg v. Hayes, 408 U.S. 665, 681 (1972).

Accordingly, intervention is proper because members of the news media are entitled to notice and an opportunity to be heard before a court may enter an order restricting access to judicial records. See United States v. Ellis, 90 F.3d 447, 449

(11th Cir. 1996); Newman v. Graddick, 696 F.2d 796, 800 (11th Cir. 1983); CBS, Inc. v. Young, 522 F.2d at 237-238.

## II. Open Judicial Records Promote the Basic Fairness of, and Respect for, the Judicial System.

> Essential to the rule of law is the public performance of the judicial function. The public resolution of court cases and controversies affords accountability, fosters public confidence, and provides notice of the legal consequences of behaviors and choices.

Regan, Robert Timothy, Sealing Court Records and Proceedings: A Pocket Guide, Federal Judicial Center (2010) at 1 (An on-line copy can be found at http://www2.fjc.gov/sites/default/files/2012/Sealing Guide.pdf). Reporting by the media on trials and cases pending before the courts serves to inform the public on how the judicial system works, promotes public confidence in the judicial system, and engenders respect for the judicial system. Open court proceedings also enhance "the basic fairness" of the judicial process. See Press-Enterprise Co. v. Superior Court ("Press-Enterprise I"), 464 U.S. 501, 508 (1984); United States v. Guerrero, 693 F.3d 990, 1000 (9th Cir. 2012). See also Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 161 (3d Cir. 1993) (holding that access to "civil judicial proceedings and records promotes 'public respect for the judicial process' and helps to assure that judges perform their duties in an honest and informed manner."). The media's access to judicial records and reporting thereon informs the public with respect to judicial proceedings. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559-60 (1976); Nixon v. Warner Communications, Inc., 435 U.S. 589, 609 (1978).

There is a "community therapeutic value" of openness of the courts. Press-Enterprise Co. v. Superior Court ("Press-Enterprise II"), 478 U.S. 1, 13 (1986). "Criminal acts, especially certain violent crimes, provoke public concern, outrage, and hostility. 'When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions.'" Press-Enterprise II, 478 U.S. at 13, quoting, Press-Enterprise I, 464 U.S. at 509.

Therefore, open courts and records "contribute to the public understanding of the rule of law and to comprehension of the functioning of the entire [judicial] system." Nebraska Press, 427 U.S. at 587 (Powell, J., concurring). In this regard, the media acts as the surrogate for the public. "Instead of acquiring information about trials by firsthand observation or by word of mouth from those who attended, people now acquire it chiefly through the print and electronic media." Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 572-73 (1980).

Open proceedings also protect litigants' rights to fair and impartial adjudications of their claims. As described by the United States Supreme Court:

> Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.
>
> * * *
>
> A responsible press has always been regarded as the handmaiden of effective judicial administration . . . . Its function in this regard is documented by an impressive record of service over several centuries. The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police,

> prosecutors, and judicial processes to extensive public scrutiny and criticism.

Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 838-39 (1978).

## III. Media Intervenors Have a Common Law and First Amendment Right of Access to Judicial Records Such as Government Exhibit 2.

The Media Intervenors have a qualified right of access to court proceedings and records, deeply rooted in the common law and the First Amendment. Regan, Robert Timothy, Sealing Court Records and Proceedings: A Pocket Guide, Federal Judicial Center (2010) at 1 (citing, Nixon, 435 U.S. at 596-97 and Richmond Newspapers, Inc. v. Virginia, 448 U.S. at 580).

The United States Supreme Court has emphasized that "what transpires in the courtroom is public property," Craig v. Harney, 331 U.S. 367, 374 (1947), and that the public has a strong interest in a full opportunity to know whatever happens in a courtroom. See Press-Enterprise I, 464 U.S. 501; Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982); Richmond Newspapers, Inc. v. Commonwealth of Virginia, 448 U.S. 555 (1980).

The United States Supreme Court has held that the common law and the First Amendment provide a fundamental right to attend all portions of a criminal trial. See Press-Enterprise I, 464 U.S. 501 (1984) (holding that the guarantee of open criminal proceedings applies to jury selection); Richmond Newspapers, Inc. v. Virginia, 448 U.S. at 579 (holding that "the right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and 'of the press could be eviscerated.'").

In Press-Enterprise Co. II, the United States Supreme Court held that the First Amendment also protects the public's and the press's access to pretrial criminal proceedings. See 478 U.S. at 12 (stating that public access to preliminary hearing was essential to the proper function of the criminal justice process). Because criminal proceedings are often resolved before trial, preliminary hearings may provide "the sole occasion for public observation of the criminal justice system." See id. Accordingly, the Court held that a qualified First Amendment right of access applied to preliminary hearings prior to trial. Id. at 7, 14.

Materials admitted into evidence at trial are presumptively open. See Poliquin v. Garden Way, Inc., 989 F.2d 527 (1st Cir. 1993); In re NBC, 635 F.2d 945, 952 (2d Cir. 1980); United States v. Criden, 648 F.2d 814, 823 (3d Cir. 1981); United States v. Guzzino, 766 F.2d 302, 303–04 (7th Cir. 1985); United States v. Massino, 356 F. Supp. 2d 227 (E.D.N.Y. 2005); United States v. Sampson, 297 F. Supp. 2d 342 (D. Mass. 2003).

In Florida, competency proceedings are open. Miami Herald Publishing Company v. Chappell, 403 So. 2d 1342 (Fla. 3d DCA 1981)(holding that competency proceedings should be open, and that a criminal defendant involved in a pretrial competency hearing is not a patient entitled to the confidentiality provisions of Chapter 394, Florida's Mental Health Act, also known as the "Baker Act.").

Competency evaluation reports are also open. In Poole v. South Dade Nursing & Rehabilitation Center, 139 So. 3d 436 (Fla. 3d DCA 2014) the Court held that a competency evaluation report should be unsealed, and that such a report was

not protected by a privacy right and was not confidential. 139 So. 3d at 441-442. Similar to the Defendant's argument here, the criminal defendant in Poole argued for privacy and confidentiality on the ground that the competency report was a medical record. "Poole finally contends the competency reports are medical records entitled to confidentiality under Article I, section 23 of the Florida Constitution, commonly referred to as Florida's Right to Privacy Law, and Chapter 456 of the Florida Statutes. We agree with the trial court that neither mandate confidentiality of the competency reports in this case." 139 So. 2d at 441.

As the Poole Court explained:

> In forensic examinations, the person being examined is not seeking care and treatment. In *Miami Herald Publishing Company v. Chappell*, 403 So.2d 1342, 1344–45 (Fla. 3d DCA 1981), this court ruled that a criminal defendant involved in a pretrial competency hearing is not a patient entitled to the confidentiality provisions of chapter 394, Florida's Mental Health Act, also known as the "Baker Act." Similarly, the Florida Rules of Civil Procedure provide for a party to submit to examination by a qualified expert, with a report of the examination made available to the other party notwithstanding any issue of confidentiality. Fla. R. Civ. P. 1.360. For the same reason, "communications made in the course of a court-ordered examination of the mental or emotional condition of the patient" are excluded from Florida's psychotherapist-patient privilege. § 90.503(4)(b), Fla. Stat. (2013).
>
> In the instant case, the physicians were consulted for purposes of examinations only, not for treatment. The purpose behind the examinations was to assist the court in determining whether the defendant was capable of participating in the criminal process. Any reports resulting from such an examination are intended to be communicated outside the patient-physician relationship. Thus, they are not the type of patient's medical record generally entitled to confidentiality protection.

139 So. 2d at 441-442.

Other state courts have also found both competency proceedings and reports to be open. See, e.g., State v. Chew, 309 P.3d 410 (Wash. 2013) (*en banc*)("we hold that competency evaluations are presumptively open once they become court records"); State v. Koch, 169 Vt. 109, 730 A.2d 577 (Vermont 1999)(non-hospitalization order); In re Times-World Corp., 488 S.E.2d 677 (Vir. App. 1997) (holding that documents which were admitted into evidence during a competency proceeding should have been open to the public); Soc. of Prof. Journalists, Utah Chapter v. Bullock, 743 P.2d 1166 (Utah 1997) (holding that, as with preliminary hearings, pretrial competency proceedings in criminal cases may be closed only upon a showing that access raises a realistic likelihood of prejudice to the defendant's right to a fair trial); Express-News Corp. v. MacRae, 787 S.W.2d 451 (Tx. App. 1990) (holding the examination and report were "criminal law matters" and thus it was error for trial court to deny media's motion for access to competency report).

Particularly on point here is the explanation provided by the Court of Appeals of Virginia in In re Times-World Corp. regarding access to documents submitted into evidence at a competency proceeding:

> The same analysis employed to determine whether the media has a right of access to a criminal competency hearing is applicable to determine media access to documents that were submitted into evidence therein. *See In re Worrell*, 14 Va.App. at 676, 419 S.E.2d at 274; *see also In re Washington Post*, 807 F.2d at 390 ("[T]he First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearings themselves."); *In re New York Times Co.*, 828 F.2d 110 (2d Cir.1987) (finding that the right of access extended to motions papers submitted by a defendant seeking to suppress evidence);

> *Associated Press, Inc. v. United States Dist. Court*, 705 F.2d 1143, 1145 (9th Cir.1983) (finding First Amendment right of access extends to "pretrial documents in general").
>
> ...
>
> We hold that our rationale allowing Times-World access to the videotape of the competency hearing is equally applicable to the documents admitted into evidence therein.
>
> Id., 488 S.E.2d at 683-684.

In federal court, mental competency hearings have historically been open to the public in the absence of specific facts supporting closure. United States v. Guerrero, 693 F.3d 990, 1000-02 (9th Cir. 2012); United States v. Curran, 2006 WL 1159855 (D. Ariz. 2006)(unpublished); United States v. Moussaoui, 2002 WL 1311734 (E.D. Va. 2002)(unpublished). In United States v. Guerrero, 693 F.3d 990, 1000-02 (9th Cir. 2012), the Court held, in the context of a petition for a writ of mandamus, that the district court did not commit clear error by denying a criminal defendant's motion to close a competency hearing. The Court held that there is a clear qualified First Amendment right of access to mental competency hearings and "related filings."

Here, the competency hearing was an evidentiary hearing, much like a full-scale trial. Guerrero, 693 F.3d at 1001. The result of the hearing was for Defendant to be held in federal custody for mental health treatment until he regains the ability to understand the proceedings and assist with his defense. It is possible that the adjudication of incompetency will dispose of the entire case, with or without a plea bargain. Id. ("public confidence in the judicial system is especially

significant where a defendant accused of a violent felony is not tried because he was found incompetent."). The rationale establishing the right of access to competency proceedings, coupled with the presumption that materials admitted into evidence are to be open, dictate that the competency report introduced into evidence as Government's Exhibit 2, and which this Court relied upon in reaching a decision, should be open and available for review, not under seal.

## IV. Defendant Has Not Demonstrated Compelling Reasons for Closure of the Court Record that Outweigh the Public's Rights to Access.

On countless occasions, courts have been asked to entertain orders limiting information that may be released to the public concerning judicial matters. But before a court enters such an order, it must conduct an exacting inquiry into the circumstances. Courts must specifically identify the factors that threaten the administration of justice or constitutional privacy interests and weigh all reasonable alternatives to mitigate the perceived threats. Only then, after development of a full record on these issues (and allowing the media an opportunity to participate), may a court narrowly fashion a remedy that accommodates the public's interest alongside that of the judicial system. See Reagan, Robert Timothy, Sealing Court Records and Proceedings: A Pocket Guide, Federal Judicial Center (2010).

Thus, a party seeking closure of the judicial record must demonstrate compelling reasons to justify the closure. United States v. Guerrero, 693 F.3d 990, 1002 (9th Cir. 2012). That is, that the "closure is essential to preserve higher values

and is narrowly tailored to serve that interest." Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 14 (1986).

Defendant has not even addressed the common law or First Amendment right to access, let alone demonstrated a compelling reason that outweighs those interests. The countervailing interests that Defendant has advanced for keeping the competency report confidential and under seal have been rejected by courts that have weighed those interests against the public's right of access. See, e.g., Guerrero, 693 F.3d at 1002-04 (holding that district court did not err in concluding that defendant failed to establish that an open competency hearing would violate his right to a fair trial, privacy interests, or attorney-client privilege and work product); Poole v. South Dade Nursing & Rehabilitation Center, 139 So. 2d at 441-442 (rejecting numerous arguments advanced by defendant that disclosure of the competency evaluation report would violate a right to confidentiality and privacy).

In addition to being rejected by court's that have considered the same type of interests, Defendant's position is not supported by federal statute or by the Federal Rules of Criminal Procedure. Tellingly, Rule 12.2 does not provide for sealing an examination report used to determine whether a defendant is competent to stand trial, even though the Rule does provide for a referral for such an evaluation, under 18 U.S.C. § 4241. See Rule 12.2(c)(1)(A). If Congress, or the Supreme Court, intended for competency evaluation reports to be sealed, then either or both would have so provided. Neither the statute, nor the Rule, however, provide for the sealing of a competency evaluation report.

United States Dept. of Justice v. Julian, 486 U.S. 1, 122 (1988), which Defendant cites in his Motion to Seal concerning presentence investigation reports does not provide a compelling interest, and is also distinguishable. Julian dealt with prisoners' access to presentence investigation reports, which are governed by Rule 32, Federal Rules of Criminal Procedure, not Rule 12, and different statutes as well. Thus, the two types of reports are treated very differently under the law.

## V. Defendant's Request to Permanently Seal the Entirety of Government Exhibit 2 is not Narrowly Tailored.

Even if the Court were to consider that Defendant has an interest that somehow outweighs the common law and Constitutional rights of access and find in favor of sealing, the entire report should not be sealed. Courts have recognized that because newsgathering is protected by the First Amendment, an order that impinges on the "journalistic right to gather news" must be "narrowly tailored to prevent a substantial threat to the administration of justice." In re Express-News Corp., 695 F.2d 807, 810 (5th Cir. 1982); CBS, Inc. v. Smith, 681 F. Supp. 794, 796 (S.D. Fla. 1988).

Sealing of the entirety of Government Exhibit 2 is overbroad. The doctor testified in open court, with members of the public and press attending. She testified about much of the information that is contained in the report. Sealing the report would be ineffectual, because much of the information has already been released to the public. Any portions that have already been testified to in open court, and those portions considered by the Court in reaching its decision that Defendant is not competent to stand trial, should be open to the public.

Furthermore, any portions that do not implicate the interest to be protected must be unsealed and made public. See Guerrero, 693 F.3d at 1003 ("[E]ven if the privacy rights of Guerrero and others named in the competency documents constitute a compelling interest, there are alternatives to full closure of the competency proceedings that can protect these interests. Courts may issue protective orders, redact names from reports, and restrict the use of other people's names during the hearing. Therefore, there are alternatives to closure and it was not clear error to conclude that Guerrero's privacy interests do not override the First Amendment right of access.").

Additionally, there is no suggested time limit on the sealing, and the report should not be sealed forever. See Local Rule 1.09(c).

## CONCLUSION

For the foregoing reasons, the Media Intervenors request that this Court enter an appropriate order granting its motion to intervene for the limited purpose of opposing Defendant's Motion to Seal Competency Evaluation Report, schedule a hearing thereon, and order that the report marked as Government Exhibit 2 at the competency hearing, which has been temporarily placed under seal, be unsealed, and any other relief the Court deems just and proper.

**HOLLAND & KNIGHT LLP**

/s/ Timothy J. Conner
Timothy J. Conner (FBN 0767580)
Jennifer A. Mansfield (FBN 0186724)
50 N. Laura Street, Suite 3900
Jacksonville, Florida 32202
(904) 353-2000
(904) 358-1872 (fax)
timothy.conner@hklaw.com
jennifer.mansfield@hklaw.com

Attorneys for Media Intervenors, Morris Publishing Group LLC, d/b/a The Florida Times-Union, The Associated Press, Multimedia Holdings Corporation d/b/a WTLV/WJXX First Coast News, Graham Media Group, Florida, Inc., d/b/a WJXT News4Jax, and Cox Television Jacksonville, LLC, WJAX/WFOX

Edward L. Birk
Florida Bar No. 0068462
**MARKS GRAY, P.A.**
P.O. Box. 447 (32201)
Suite 800
1200 Riverplace Boulevard
Jacksonville, FL 32207
Telephone: (904) 398-0900
Facsimile: (904) 399-8440
ebirk@marksgray.com
jpopovici@marksgray.com

Attorneys for Graham Media Group, Florida, Inc., d/b/a/ WJXT-TV4

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically will send email notification of such filing to the following attorney(s) of record:

Harry L. Shorstein
Jeremy Lasnetski
Paul A. Shorstein
Shorstein, Lasnetski & Gihon, LLC
6550 St. Augustine Rd., Suite 303
Jacksonville, FL 32217
Email: Harry@jaxtriallaw.com
Email: jeremy@slgattorneys.com
Email: paul@jaxtriallaw.com
*Attorneys for Defendant*

Kevin C. Frein
United States Attorney's Office – FLM
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202
Email: Kevin.Frein@usdoj.gov

/s/ Timothy J. Conner
Attorney

#38120871_v1